DELAWARE TRUST COMPANY, a Delaware corporation, Successor Trustee under Item Sixteenth of the Last Will and Testament of FANNIE T. H. HAY, deceased,
Plaintiff,

*vs.*

DELAWARE WOMEN'S CHRISTIAN TEMPERANCE UNION, a Delaware Corporation, DOROTHY HILYARD, CORNELIA GILLETTE, EDITH LACY, and MARGARET NORRIS, and JANUAR D. BOVE, JR., Attorney General of the State of Delaware,
Defendants,

ANNA L. BRINTON, EDITH DRISCOLL, ROBERTA GREEN, LULA HARPER, ANNIE F. MATTHEWS, LUCY PIERSON and ELIZABETH STEEN,
Interveners.

*New Castle, June 21, 1960.*

*Edward W. Cooch, Jr.,* Wilmington, for plaintiff.

*Edward W. Cooch, Jr.,* Wilmington, for defendants.

*Samuel Handloff,* Wilmington, for interveners.

SEITZ, Chancellor: The testatrix, Fannie T. H. Hay, died about July 17, 1935, leaving a will dated January 11, 1933. In order to understand the issues posed it is necessary to quote Item Sixteenth in full:

> "Sixteenth: I give, devise and bequeath unto my Executor, hereinafter named, and to such persons as shall, at the time of my death, constitute the Delaware State President of the Women's Christian Temperance Union and the three County Presidents thereof, to-wit, the President of Sussex County, the President of Kent County, and the President of New Castle

County, and to their successors, and assigns, the sum of Fifteen thousand Dollars ($15,000), In Trust Nevertheless, that they shall, out of said money incorporate a Company under the laws of the State of Delaware, under the name and style of Delaware Women's Christian Temperance Union, or such other appropriate name or title as they may select, which Corporation shall have perpetual existence, and its objects shall be to aid and advance the cause of Christianity, to promote the cause of abstaining from the manufacture, use or sale of intoxicating liquors, to educate public sentiment up to the standard of total abstinence, to aid in securing legal prohibition and the complete banishment of the liquor traffic, to buy, hold, sell, mortgage or otherwise dispose of real and personal property, as authorized by the Statutes of the State of Delaware and primarily, subject to the cost in corporation, the said legacy of Fifteen thousand Dollars ($15,000) shall be expended by said Trustees and/or by said Union, for the purchase and equipment of a Hall, Home or Headquarters, in which said objects may be promoted and carried on, which said Home or Headquarters shall, during the time of the existence in the State of Delaware of the organization now known as Women's Christian Temperance Union, branch of National Women's Christian Temperance Union, be used and occupied as a Headquarters for the Delaware State organization of said Women's Christian Temperance Union, that is, the State President, and the State Officers shall be permited to occupy and use said building for their State Headquarters, work and activities, free of rent or other service charge. Said Hall, Home or Headquarters may also be used for Headquarters and as a place for meetings by the County Officers and by the Local Unions throughout the State of Delaware of Women's Christian Temperance Unions, providing, however, that such Local Unions as use such Hall, Home or Headquarters for their meetings and the activities, shall pay their proportionate share or cost of the maintenance and upkeep of said Hall, Home or Headquarters.

"The management, control and operation of said Headquarters shall be in the Corporation, whose Officers may consist of the President of the State Women's Christian Temperance

Union, who shall be the President of said Corporation, the Treasurer and Corresponding Secretary of said State Organization and each of said County Presidents of said Organization, and such other members as may be determined upon by the Corporation.

"The site and building of said Hall, Home or Headquarters shall be selected by my said Executor and other said Trustees, with or without the cooperation of said Union, and it shall preferably be located in the City of Wilmington, Delaware, and when acquired, said Union having been incorporated, the title thereto shall be vested by deed or proper conveyance in the law in said Union, In Trust, in perpetuity, for the trusts, purposes and objects hereinbefore enumerated; Excepting, However, that said property may be sold, mortgaged or disposed of by said Corporation, in its discretion, free and clear of said trust."

As directed by the quoted Item Sixteenth, there was incorporated an entity styled as "Delaware Women's Christian Temperance Union" ("Union"), one of the defendants. By deed dated November 4, 1941, the Union received title to certain property located at 100 W. 8th Street, Wilmington. About $7,000 of the Hay Trust was used to purchase the property and its furnishings.

During the years between the death of the testatrix and January 1959, the Hay Trust was under the management of the various persons who from time to time held the designated offices of the Women's Christian Temperance Union.

In January 1959, the defendants, who constituted the state and county officers of the W. C. T. U., filed a petition in which they submitted their resignations as trustees under the trust and sought the appointment by the court of a corporation as successor trustee. The reasons given for the requested change were that the frequency of the change of officers had resulted in numerous trustees, and had not proved satisfactory with respect to the administration of the trust. It also appeared that accountings had not been filed over the many years. The court appointed plaintiff, Delaware Trust Company, as successor trustee. The successor trustee's inventory shows that the

assets now have a value of about $37,000. It includes the West 8th Street building, with a listed value of $25,000. Certain chattels, a savings account and some stock constitute the balance of the assets.

After the plaintiff took over as successor trustee it determined that there was doubt as to the proper interpretation of the will and filed the present complaint seeking instructions. The defendants in the action were the Union, the state and county officers of the W. C. T. U. and the Attorney General. Thereafter certain other members of the W. C. T. U. were permitted to intervene as defendants ("interveners") because they sought to express a position different from that advanced by the original defendants. Since the other defendants and the interveners were actively litigating the matter the Attorney General took no part.

The parties are now in agreement as to the proper interpretation of several of the matters presented. Since their agreed interpretations seem reasonable, the court will adopt them. I shall therefore address myself only to the areas where there is a difference of opinion.

■ The interveners contend that all principal above $15,000 and all income arising from the income producing property, in excess of the amount needed to maintain the headquarters property, should be transferred to the Union free and clear of the trust. The defendants argue that the testatrix intended that any excess funds not needed to purchase and equip the building and to pay for the incorporation of the Union should be held in trust to be used to maintain the building and to pay for replacements.

The issue posed requires an analysis of Item Sixteenth of the will. Certain it is that the language could be clearer. It will be noted at the outset that the persons designated as trustees were the various county presidents and the state president of the W. C. T. U. at the death of the testatrix and their successors. The reference to successors is some slight evidence that the testatrix had in mind that the trust was to last beyond the period when the structure was built and furnished and the Union incorporated.

It will also be noted that after providing for the use of some of the money to incorporate the Union, the testatrix directed that it was

to be used "primarily" to purchase and equip the hall to be used as the headquarters of the various W. C. T. U. organizations. It would seem that by the use of the word "primarily", the testatrix recognized that all the proceeds might not be needed to incorporate the Union and to purchase and equip the headquarters. I say this because it would have been simple to merely direct that the money be used for those purposes without the use of the word "primarily". Its use suggests that the testatrix had a secondary purpose in mind. This conclusion is buttressed by the use of the words "out of said money" which suggests a possible residue.

I believe the will leaves some doubt as to the secondary purpose. However, I think the fair implication is that the balance was to be used to assist in maintaining and replacing the building and equipment. I state this not only because of the obvious fact that such building and equipment would have to be maintained but also because the testatrix recognized that all those using the headquarters would not be required to pay a proportionate share of the costs. For example, the state officers were not required to make payments for its use. It may also be noted that in charging the local groups for the use of the headquarters there is no item to be included which would be considered as a charge for capital replacements.

The interveners contend that the testatrix intended the $15,000 to be spent for a headquarters and to the extent it was not needed for that purpose it should be used for the general purposes of the Union. For the reasons given I do not believe the testatrix intended the excess proceeds to be so employed. The testatrix was obviously interested in the perpetuation of the headquarters and my decision seems to be more likely to accomplish that objective. Her reference in the last paragraph of Item Sixteenth to the "trusts, purposes and objects hereinbefore enumerated" is in connection with the use of the headquarters not the use of excess proceeds.

· I therefore construe the will to mean, with or without the assistance of the cy pres doctrine, that the unexpended proceeds remaining after the payment of the incorporation charges and the purchasing and equipping of the headquarters were to be held in trust and, as the

parties have agreed, the net income therefrom was to be used for the maintenance, upkeep, repair and replacement of the headquarters.

■ The next question posed is whether the Union should be trustee in lieu of the plaintiff, Delaware Trust Company. The defendants contend that plaintiff should continue while the interveners contend that under the language of the will the plaintiff should not have been appointed in the first place. The interveners' position is that the Union should be trustee, with the persons holding the offices designated by the testatrix required to serve as directors or replaced with persons willing to comply with the terms of the will.

The prime difficulty with interveners' position is that I do not believe the testatrix intended to designate the Union as trustee of the unexpended balance. In contrast, she designated the trustees explicitly and presumably the unexpended funds should remain with them or their successors. In this case the court reaffirms its conclusion that a proper showing for the appointment of a corporate successor was made. Under these circumstances I understand that the interveners consider the plaintiff acceptable.

I conclude that plaintiff should continue as successor trustee.

■ The interveners next contend that if the Women's Christian Temperance Union of the State of Delaware decides that the headquarters should be sold and other real estate purchased, the trustee should be required to make such sale and purchase.

The defendants take the position that the request is premature since there is no such question imminent. The court agrees and so the matter will not now be resolved except to point out that it is too clear for controversy that under the will the property may be sold by the Union without court authorization. Obviously, the proceeds would still be subject to the terms of the trust. The "open" questions would be as to the entity entitled to administer such proceeds and determine whether another home should be purchased.

■ Finally, the defendants argue that title to the headquarters property should be placed in the plaintiff as successor trustee or remain in the Union upon the addition to the record of the fact that

it is held in trust. In view of the explicit language of the will the title to the property must remain in the name of the Union. However, so that subsequent officials may be constantly aware of the terms under which it is held I conclude that the deed record should contain a reference to the fact that it is held under the terms of the trust created by the will of Fannie T. H. Hay.

In view of the fact that Union has title to and control of the headquarters and equipment, I do not believe the plaintiff trustee has any accounting obligation with respect thereto.

Present order on notice.